UNITED STATES, Appellee

v

GREGORY A. JONES, Sr., Private First Class,
U. S. Army, Appellant

7 USCMA 623, 23 CMR 87

No. 8972

Decided March 1, 1957

*Captain John F. Christensen* argued the cause for Appellant, Accused.

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

### Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by a general court-martial of two specifications of larceny (one of $70.00; the other of a watch), in violation of Article 121 of the Uniform Code of Military Justice, 10 USC § 921. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The findings and sentence were approved by the convening authority and affirmed by a board of review. We granted the accused's petition to determine whether the law officer's instructions on voluntariness as affecting the weight to be given to pretrial statements of the accused were correct.

The owner of the stolen money, Sergeant Bell, testified that he and the accused were jointly occupying a supply truck during Operation Sagebrush in Louisiana. One morning, shortly after leaving the truck, Bell discovered that he had forgotten his wallet. He returned to find the wallet, containing about $80.00, missing. Sometime afterward, according to Bell, the accused admitted taking the wallet and the money. Another witness, Sergeant Spann, testified that he had overheard the accused admit the larceny.

Private First Class Dziedzicki, owner of the stolen watch, testified that he left an overnight bag which contained, among other items, the watch in a wall locker of a friend. Thereafter Dziedzicki returned from a pass and discovered that the accused had taken over occupancy of the locker. Upon request the latter delivered the bag. However, Dziedzicki did not notice at the time the absence of the watch since he had forgotten about it being in the

624

bag. His memory was revived sometime later when he noticed the accused in possession of the watch. He identified the watch as his own and upon request it was returned to him. The incident was apparently reported for a few days later the accused was overheard to remark, "If I had not stolen Dziedzicki's watch I would not be in the fix I am in now."

Two confessions of the accused were received in evidence over objection of the accused that they were involuntary because he was under the influence of phenobarbital elixir at the time they were taken. Evidence was introduced to show that the accused had suffered a "seizure" which resulted in his being sent to the Walter Reed Medical Center for treatment. At Walter Reed the accused was given a bottle of phenobarbital along with instructions to take one teaspoonful twice daily. Two doctors testified that the recommended dosage would have no harmful residual effect, but were a person to imbibe two tablespoonfuls at one time he might well be influenced thereby. However, the reaction to such dosage would be immediately apparent to an observer for the reason that the accused's reflexes would be sluggish and he would be drowsy.

The accused testified as to the voluntariness of the confessions. According to his account of the incident, he took two tablespoonfuls of phenobarbital as he was leaving Walter Reed, and during the ensuing interrogation—this testimony was substantiated by the Criminal Investigation Division agents—he took another spoonful. The result was, according to the accused, that he felt "higher than a kite" and "at sometimes I could understand what he [the agent] was saying and again it was just a lot of words."

Both Criminal Investigation Detachment agents testified—along with other witnesses who observed the accused at the time—that he appeared well-coordinated and normal.

As to the evidence respecting the voluntariness of the confession, the law officer overruled the defense objections and the confessions were received.

Along with the admission of the statements, the law officer instructed the court as follows:

". . . In this regard, gentlemen, you have heard evidence bearing on the voluntariness of these statements, Prosecution Exhibits 8 and 9. You also have heard testimony of the accused as to how much medicine he consumed on 6 January 1956. That is the day that the confessions were made. You also have before you the stipulated testimony of Lieutenant Colonel Wetzel and Lieutenant Liu. Those are Prosecution Exhibits 5 and 7 pertaining to the effect of this medicine, namely, phenobarbital. You have heard testimony as to the accused's appearance and condition on 6 January 1956. *Now it is recognized that involuntary statements are often untrustworthy and unreliable. Therefore, the voluntariness of the statements before you here constitutes a matter you should consider in determining what weight, if any, you are to give to those statements.* In deciding this latter question you should be affected in no way by the circumstances under which I have permitted these statements to be received in evidence. In this connection, I would like to state that the fact that the accused was taking phenobarbital prior to his giving these statements does not make the statement, per se, inadmissible. Since impairment of mental faculties, short of insanity, does not affect the admissibility of such statements by the court, in determining the weight or effect to be given to those statements, namely, Prosecution Exhibits 8 and 9, you should take into consideration the possible impairment of the accused's mental faculties that may have resulted from his taking phenobarbital prior to the giving of these statements." [Emphasis supplied.]

The above instruction as to voluntariness was substantially restated during the law officer's final charge to the court members.

The law officer apparently felt, and

we agree, that the issue of voluntariness was raised by the evidence. ■ See United States v O'Connor, 237 F2d 466, 474 (CA 2d Cir) (1956) ; United States v Indian Trailer Corporation, 226 F2d 595, 598 (CA 7th Cir) (1955) ; Tatum v United States, 190 F2d 612, 617 (CA DC Cir) (1951).

The question before us is whether the law officer's instruction that "the voluntariness of the statements before you here constitutes a matter you should consider in determining what weight, if any, you are to give to those statements" is a correct guide to a court with respect to their consideration of a confession, or whether the court should have been instructed in substance that if they did not determine that the statement was voluntary they must reject it and disregard it as evidence in the case.

It has been suggested by the Government that our holdings in United States v Dykes, 5 USCMA 735, ■ 19 CMR 31, and United States v Higgins, 6 USCMA 308, 20 CMR 24, support the law officer's instruction. Certainly these opinions are capable of that interpretation. It also appears that this Court by those opinions was attempting to restate paragraph 140*a*, Manual for Courts-Martial United States, 1951, in trying to achieve the same results by means of a voluntariness, weight, credibility test. The Manual paragraph in question recites generally the majority rule applied in the Federal courts. Since the Dykes and Higgins opinions, supra, the law officer's handbook has been revised as to instructions on the consideration of confessions as follows:

"Gentlemen, there has been admitted in evidence (Prosecution Exhibit ————), the out-of-court statement of the accused with respect to the offense(s) of ——— (and ————). It is your duty to determine the weight and credibility of this statement. In so doing, you should carefully consider the circumstances under which this statement was obtained. In this regard, the law recognizes that involuntary statements are often untrustworthy and unreliable. Therefore, the voluntariness of this statement, which has been contested by a claim that the statement was obtained by (compulsion) (duress) (coercion) (by reason of a failure to warn) (promise of ————) (————), constitutes a matter you should consider in determining what weight, if any, you are to give to this statement, and you should give weight to the statement only to the extent that you believe it to be *truthful*. In determining this qquestion, you should be affected in no way by the ruling of the law officer in admitting the statement in evidence." [Department of the Army Pamphlet No. 27–9, August 1954, The Law Officer, Appendix XVII, page 127.] [Emphasis supplied.]

This proposed instruction does not follow the Manual. In order to insure that there be no question of the present Court's position, and to clarify a situation which has apparently caused some confusion, we specifically approve the Manual coverage (paragraph 140*a*, Manual, supra) which restates the prevailing Federal rule hereinafter discussed.

Article 31(d) of the Code declares "No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial." While it is true that an involuntary ■ confession may be untrustworthy and hence unworthy of belief, it is also true that a confession may be absolutely truthful yet inadmissible because of involuntariness. The latter protection is one which carries far back in history to the rack and screw of the Spanish Inquisition, the French Monarchy's Lettres de Cachet, and the Star Chamber proceedings in England. This Court has recognized in the past that there is even greater danger of involuntary confessions obtained from accused persons by military superiors than in the case of civilian interrogators.

The Federal courts have recognized this distinction, i.e., that where the evidence of voluntariness is ██ in conflict, it should be pre- ██ sented to the jury under ██ proper judicial guidance. These courts have recognized, as we do, that the test of initial admissibility is whether or not the confession was freely made without compulsion or unlawful inducement. The initial admissibility question is not one to be determined by the court members or the jury but is the duty of the law officer or the judge alone. But when the evidence of voluntariness is conflicting, it is for the court members or the jury to make the final determination. As the Federal court stated in Patterson v United States, 183 F2d 687 (CA 5th Cir) (1950):

". . . [T]his does not mean that a jury shall pass on the admissibility of evidence, *but merely that the jury may reject the evidence if it disagrees with the court's original determination that it was voluntarily made.* Perrygo v. U. S., 55 App. D.C. 80, 2 F.2d 181, 184; U. S. v. Lustig, 2 Cir., 163 F.2d 85, 89. And the burden is on the prosecution to establish that the confession was not obtained by improper means." [Emphasis supplied.]

In United States v Echeles, 222 F2d 144 (CA 7th Cir) (1955) besides citing with approval the Patterson case, supra, the court stated:

"Paul's confession being in evidence, it became a question for the jury as to whether or not it was voluntarily given and, if so, it was for the jury to give it such weight as the jury thought it was entitled to receive. The voluntariness of the confession would have been a proper subject for argument by counsel before the jury."

The following trial judge's charge to the jury was expressly upheld in De Lorenzo v United States, 219 F2d 506 (CA DC Cir) (1955):

"'The Government has introduced in evidence certain oral statements claimed to have been made by the defendant while in the custody of the police. Defendant's contention is that whatever statements were made by him were not made voluntarily but were the result of physical and mental coercion caused by hunger, weariness and refusal by the police to permit him to contact his mother.

"'In this respect you are instructed as follows:

"'The jury must first determine what, if any, statements were made by the defendant while in the custody of the police. The jury must next consider, with respect to such statements, if any, whether they were made by the defendant voluntarily and of his own free will and with full knowledge of the nature and the consequences of them. In determining whether a statement of [sic] confession is voluntary or not, you should consider the relation of the parties, the conversation between the police officers and the defendant, if any, the time and place when the alleged statement or confession took place, the physical condition of the defendant, and all the circumstances surrounding its making.'"

In United States v Anthony, 145 F Supp 323, 335 (DC Pa) (1956), the jury was instructed, "if it was not given voluntarily of her own free will, to reject it; otherwise to give it such weight as in their judgment it was entitled to under the circumstances."

It appears clear that in a majority of Federal jurisdictions—although the jury does not pass on admissibility of the evidence—the latter must, nevertheless, reject a confession in toto if it disagrees with the judge's original admissibility determination of voluntariness.

We feel that the Code and the Manual follow the prescription of Article 36 of the Code that—subject to the President's determination as to practicabilities—courts-martial shall "apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts." Paragraph 140a of the Manual provides:

"The ruling of the law officer (or

of the special court-martial) that a particular confession or admission may be received in evidence is not conclusive of the voluntary nature of the confession or admission. Such a ruling merely places the confession or admission before the court, that is, the ruling is final only on the question of admissibility. Each member of the court, in his deliberation upon the findings of guilt or innocence, may come to his own conclusion as to the voluntary nature of the confession or admission and accept or reject it accordingly. He may also consider any evidence adduced as to the voluntary or involuntary nature of the confession or admission as affecting the weight to be given thereto."

We do not find any inconsistency with Article 51(b) of the Code, 10 USC § 851, and the Manual. Article 51(b) provides:

"The law officer of a general court-martial and the president of a special court-martial shall rule upon interlocutory questions, other than challenge, arising during the proceedings. Any such ruling made by the law officer of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of accused's sanity, is final and constitutes the ruling of the court. However, the law officer may change his ruling at any time during the trial. Unless the ruling is final, if any member objects thereto, the court shall be cleared and closed and the question decided by a voice vote as provided in section 852 of this title (article 52), beginning with the junior in rank."

The law officer rules only as to the admissibility of a confession and under Article 51(b) his ruling in that regard is indeed final. His ruling does not come within one of the two exceptions mentioned in the Article and hence, insofar as admissibility is concerned, the court members are bound thereby. But the law officer cannot assess what value will be placed on a confession by the fact finders. Para-

**628**

graph 140a of the Manual, supra, along with a majority of the Federal cases, holds that the work of the judge or law officer is completed when he rules on admissibility. Thereafter, since voluntariness, as well as trustworthiness, is a factual question, it must be determined by the jury or by the court members. If a court member—despite the law officer's ruling on admissibility—concludes that a confession is involuntary, he must reject it before he ever gets to the point of assessing its trustworthiness. As Judge Latimer stated in his concurring opinion in United States v Dykes, supra:

". . . But my construction of the language [paragraph 140a] used leads me to believe that the framers of the Manual intended to say that where a court-martial member concludes that a confession is involuntary, he is not thereafter free to assess its trustworthiness and, in turn, the weight to be accorded to it. If they did not intend to so state, then I am at a loss to understand why the inconsistency in the language. It makes little sense to say a confession can be rejected and yet weighed for its truthfulness and if found not to be false, it may be used to support a finding. At the very least that would in all instances result in an acceptance of the evidence and an assessment of its truthfulness. If it were corroborated by some other evidence it would never be rejected. I do not say a contrary interpretation is impermissible but it very effectively chisels away a right running to the accused without any compensating benefit."

In view of the foregoing, we hold that where voluntariness is in issue it must be decided by the court members in accordance with the Federal and Manual rule, unfettered by any simultaneous considerations of weight and credibility. That is, the court members will only determine the credibility and weight of the confession if they have first found that it was voluntarily made. It follows that here, therefore, the law officer did not correctly advise the court with his instruction on voluntariness.

Having concluded that portion of the instruction incorrect we must next determine whether it was prejudicial. Article 59(a) of the Code, supra. We have no hesitancy in holding that it was not. Throughout the trial, counsel for the accused appeared not only satisfied with the instruction on voluntariness as initially given by the law officer but actually insisted that the law officer reiterate it in his final instructions to the members of the court. During an out-of-court conference, preparatory to the law officer's final instruction to the court, the following transpired:

"LO: You heard the instruction I gave when I let in Prosecution Exhibits 8 and 9. I will give that same instruction or substantially the same in my general instructions. I will also give my general opening statement. I believe you are all familiar with that. I will give the elements of larceny. It does not appear to me that any lesser included offense is involved here. So, unless the defense requests it I don't consider giving that. Does the defense request an instruction?

"DC: There is no request for instruction covering a lesser included offense. The defense would like, as you stated before, to have an instruction relative to the weight to be given.

"LO: In addition to this?

"DC: I think the standard instruction is sufficient as to the weight that can be given to an accused's statement which is given under duress. I believe there is a standard statement.

"LO: I think what you possibly have in mind is the statement contained in 19 CMR. [The Dykes opinion is contained in 19 CMR 31.] I will show you a copy which is less than what I gave the court before.

"DC: That is the one I request.

"LO: In addition to that it is my intent to give the fact that the accused was taking phenobarbital prior to giving the statement according to the testimony that was given. Do you want any more than that?

"DC: No, that is the instruction I had in mind.

"LO: That is included and has already been given to the court. Any request for further instructions?

. . . . . . .

"LO: Are there any requests for instructions from the prosecution?

"TC: No sir.

"LO: Any request from the defense?

"DC: No, these are sufficient.

"LO: Is there any objection by the prosecution?

"TC: No sir.

"LO: By the defense?

"DC: No sir."

At the conclusion of his instructions to the court, the law officer again inquired:

"LO: Are there any requests for further instructions from the prosecution?

"ATC: No sir.

"LO: From the defense?

"DC: No sir.

"LO: Are there any objections to the instructions given, by the prosecution?

"ATC: No objection.

"LO: By the defense?

"DC: No sir.

"LO: Does the court desire any further instructions?

"PRES: No."

A more conscious waiver could hardly be imagined. While it is true that as of the time of trial, the Dykes instruction with respect to voluntariness appeared to be the law of the court, there was no necessity for the defense to specifically request the instruction if he thought it harmful to his cause. The defense counsel may not at the trial request an instruction and thereafter claim on appeal that he was prejudiced by the law officer's acquiescence in that same request. See United States v Smith, 2 USCMA 440, 9 CMR 70; United States v Beer, 6 USCMA 180, 19 CMR 306. While we assert that the correct instruction on voluntariness is as we have stated in this opinion, in view of all the circumstances, including defense counsel's specific request for the instruction as given, we cannot con-

**629**

clude that the rights of the accused were prejudiced in this case.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

The Court's opinion announces the law to be as stated by the provisions of the Manual for Courts-Martial, United States, 1951, and as interpreted in my concurring opinion in United States v Dykes, 5 USCMA 735, 19 CMR 31. However, since the date of the Court's decision in that case—which is at variance with the present holding—the Services have tailored their instructions to meet the law as it was there announced, and the Army has published, for use of its legal personnel, a form instruction in accordance therewith. For those reasons, this is one instance when the doctrine of stare decisis has logic and merit, and I would, therefore, apply that principle in this case. No substantial rights will be impaired by continuing the present rule, and it is better that the law be fixed than that it be faultless. However, we all agree that the rule announced herein is the better one, and I, therefore, join the majority in its disposition.