UNITED STATES, Appellee

v

WILLIAM E. POWELL, JR., Sergeant First Class, U. S. Army, Appellant

8 USCMA 381, 24 CMR 191

No. 9592

Decided November 8, 1957

*Captain John F. Christensen* argued the cause for Appellant, Accused. With him on the brief was *Joseph Chacon, Esq.*

*First Lieutenant James G. Duffy* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant William K. Davenport,* and *First Lieutenant Chester F. Relyea.*

## Opinion of the Court

HOMER FERGUSON, Judge:

A general court-martial convened at Fort Sam Houston, Texas, found the accused guilty of having committed an indecent, lewd, and lascivious act with another, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. We granted review to determine the correctness of the law officer's instructions regarding a purported statement made by the accused.

Preceding the statement's introduction into evidence, the prosecution called one Specialist First Class Holford, a criminal investigator, as a witness. He testified concerning his interrogation of the accused during the early morning hours of April 20, 1956,

following his apprehension by civilian police. After advising him of the nature of the offense of which he was suspected, he read Article 31, Uniform Code of Military Justice, 10 USC § 831, to him and "was satisfied" in his own mind that the accused understood his rights. Sergeant Riojas of the Military Police Detachment was present during the reading. The accused subsequently executed a statement in which he admitted having indecently touched the victim.

The accused testified concerning the nature and circumstances under which the statement was taken. Upon being apprehended by civilian police, he was taken to a police station where he was held approximately an hour and fifteen minutes until surrendered to military police. He had been drinking steadily during the evening in question and felt "rather exausted [sic] at that time of the morning." In answer to a question on direct examination, he stated that he could not recall whether he had been warned of his rights under Article 31, supra. On cross-examination, the following colloquy occurred:

"Q. Do you recall Mister Holford reading Article 31 to you—of the Uniform Code?

A. Yes, sir. I believe he did read it. I don't recall him reading it, however. But he may have read it.

"Q. You don't know whether he read or made any explanation to you or not. You just don't recall?

A. No, sir. I just don't recall.

"Q. You are not saying then that he did not. Is that true? Is that correct?

A. Well, sir. I will say that he did not. I'm sure that if he had done so I would have remembered it.

"Q. You say that he did not advise you of your rights under Article 31 of the Uniform Code?

A. Yes, sir."

The statement was subsequently admitted into evidence over defense objection. In admitting the statement, the law officer instructed the court as follows:

"LAW OFFICER: At this time I will make a statement to the court in reference to this exhibit which has been received in evidence. Gentlemen: It is your duty to determine the weight and credibility of this statement. In so doing, you should carefully consider the circumstances under which this statement was obtained. In this regard the law recognizes that involuntary statements are often untrustworthy and unreliable. *Therefore, the voluntariness of this statement constitutes a matter you should consider in determining what weight, if any, you are to give to this statement.* In determining this question, you should be effected [sic] in no way by the ruling of the law officer in admitting this statement into evidence. The voluntariness of this statement has been contested on one or more grounds. One ground of objection, was that; there was no warning of the rights. Another seemed to be, from the testimony of the accused, possibly a duress, in that the accused on the stand testified that he wanted to leave, and was advised that he couldn't leave until he made a statement. You should consider these matters in determining the weight that you would give to this statement—weight, if any. *You should give weight to the statement only to the extent that you believe it to be true.* In so far as it may bear on the voluntariness, and thus on the weight, if any, you should consider the cirmstances [sic] surrounding the giving or the failure to give a warning to the accused of his right to remain silent. Now, in this regard; any person who is conducting an official military investigation prior to trial whether or not such person is subject to the Uniform Code of Military Justice, before interrogating or requesting any statement from accused or a person suspected of an offense, is required to inform the accused or the person suspected, that any statement made by him might be used as evidence against him in trial by court-martial." [Emphasis supplied.]

Substantially the same instruction

was repeated during the law officer's final charge to the court.

The underscored portions of the above instruction come within the purview of our holdings in ■ United States v Jones, 7 USCMA 623, 23 CMR 87, and United States v Schwed, 8 USCMA 305, 24 CMR 115, and are prejudicially erroneous. We held in those cases that the correct rule under the Manual, as well as the prevailing Federal rule, is that the court must reject a confession *in toto* if it finds it involuntary. An issue as to voluntariness must be submitted to the court-martial unfettered by any consideration of weight and credibility. Paragraph 140a, Manual for Courts-Martial, United States, 1951. Patterson v United States, 183 F2d 687 (CA 5th Cir) (1950); United States v Echeles, 222 F2d 144 (CA 7th Cir) (1955). In United States v Schwed, supra, we reversed a conviction where a similar instruction was given. In answer to the contention that the erroneous instruction was induced by the accused or waived by his failure to object, the following language from the Schwed case, supra, is tailored to fit the present case. We there said:

"While we did not reverse the findings and sentence in that case [Jones, supra], we reach a different result in this instance because there was no induced error. Here, the law officer gave the instruction on his own initiative, believing that the voluntariness of accused's confession was in issue. Defense counsel made no request for the instruction, so, at best for the Government, his lapse, if any, was purely one of omission. Therefore, the doctrine of self-induced error is not applicable and we do not invoke waiver because at the time of trial the principles set out in United States v Dykes, 5 USCMA 735, 19 CMR 31, and United States v Higgins, 6 USCMA 308, 20 CMR 24, prevailed, and defense counsel cannot be criticized for not objecting to an instruction approved by us."

The Government insists, however, the accused could not have been prejudiced because the issue of voluntariness was never raised. Although conceding ■ that the accused's testimony that he had not been warned was qualified, it cannot be said that such evidence does not raise the issue. In United States v Wilson, 7 USCMA 713, 23 CMR 177, we made it clear that it is the law officer who bears the primary burden of insuring that the fact finders are instructed as to the elements of those lesser included offenses which are raised by the evidence. We there went on to say that:

"We have said on numerous occasions that it is the law officer who is in charge of the trial proceedings and responsible for its orderly conduct. One of his most important functions is to give adequate, comprehensive instructions on the issues of the case. The trial of a criminal case is not a game to be regulated by the whims of counsel. If we are to build a real system of military justice, we must ensure that the law officer is shouldered with the responsibility of seeing to it that the court-martial members are given proper guideposts to reach a fair and just verdict, counsel for the parties notwithstanding. If he is to find his proper place in the scheme of military law, and bear his responsibility to the Government, the accused and the system, we do not believe he can be stripped of the right of final decision as to what instructional guidance will lead the court to a proper decision."

In United States v Morphis, 7 USCMA 748, 23 CMR 212, the law officer had instructed the court on the effect of voluntary intoxication on the accused's ability to premeditate. The instruction, however, contained error. It was urged that the accused could not have been prejudiced because evidence of the affirmative defense was weak and doubtful. We rejected this argument and in the course of our opinion said:

". . . We cannot substitute our judgment for that of the law officer who saw and heard the witnesses and

384

the evidence presented at trial, and on that basis framed the issue of intoxication presented to the court— without objection from counsel. Reasonable minds could not conclude that as a matter of law the affirmative defense of voluntary intoxication was not raised by the evidence. To do otherwise would place us in the role of fact finders—a function which is beyond the scope of appellate authority granted us by the Code. Article 67, Uniform Code of Military Justice, 10 USC § 867."

We similarly reject the Government's contention in the instant case that the issue of voluntariness was not raised.

The Government also impresses upon us the twofold argument that the error comes within the harmless error doctrine under Article 59(a), Uniform Code of Military Justice, 10 USC § 859, and that the rule in the Jones decision, supra, should only be applied prospectively. Both of these contentions were fully considered by the Court in the Schwed case, supra, and were decided adversely to the Government. We see no reason to disturb that holding.

This leaves for consideration the remaining question of whether the instruction sufficiently informed the court that if it found the accused's statement was obtained in violation of Article 31, supra, it must reject it and give it no weight whatsoever. We believe the instruction failed adequately to inform the court that "No statement obtained from any person in violation of this article . . . may be received in evidence against him in a trial by court-martial." Article 31 (d), supra. Although the law officer correctly advised the court that before interrogating or requesting any statement pursuant to an official military investigation, a warning in accordance with Article 31, supra, must be given, nowhere was the court specifically told that if it found that no such warning was given the statement must be rejected *in toto* and accorded no weight. This omission was further compounded by the law officer's earlier instruction that the court should consider the circumstances surrounding the giving or

failure to give a warning to the accused of his right to remain silent insofar as "it may bear on the voluntariness, and *thus on the weight*, if any" to be accorded the statement. As we emphasized in Jones, supra, the question of voluntariness must be determined by the court members "unfettered by any simultaneous considerations of weight and credibility. That is, the court members will only determine the credibility and weight of the confession if they have first found that it was voluntarily made." It likewise follows, therefore, that if an issue is raised concerning whether or not a statement was taken in violation of Article 31, supra, the court-martial must be advised it may only give weight to the statement if it first finds that it was made in accordance with the provisions of the Article.

The findings and sentence are set aside and the decision of the board of review is reversed. A rehearing may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

There are two principal reasons why I dissent from the rationale of my associates in this instance. First, I do not believe that, merely because a law officer instructs on a subject, we cannot go behind his instruction and ascertain if the issue is raised reasonably. See my opinion in United States v Morphis, 7 USCMA 748, 23 CMR 212. Second, there is no issue of voluntariness involved in the case at bar. Assuming, arguendo, that accused raises any question at all, his only contention is that he was not warned under Article 31. Under the facts found in this record, the omission in that regard cannot be used as a prop to support the holding that the law officer erred in not informing the court-martial to disregard the confession if it were found to be involuntary. My views concerning that principle are found in United States v Gibson, 3 USCMA 746, 765, 14 CMR 164, where I stated:

"Some difficulty is encountered in

applying the foregoing principle to all the matters covered in Article 31 and this may be occasioned by the fact that, at first blush, the Manual seems to discuss indiscriminately statements whose admissibility depend upon either voluntariness or failure to warn. We, however, should be competent to distinguish them clearly and rule accordingly. In some instances the two grounds may blend together while in other instances, there is no reasonable relationship. In the latter instance, where inadmissibility depends upon failure to warn, the ruling of the law officer should be final, and the ultimate triers of fact should have no authority to redetermine that issue. In furtherance of that principle, I desire to point out that the last subsection of Article 31 contains two parts which are stated in disjunctive and I quote them: 'No statement obtained from any person (1) in violation of this article, or (2) through the use of coercion, unlawful influence, or unlawful inducement, shall be received in evidence against him in a trial by court-martial.' That section deals specifically with two separate and distinct areas which, if invaded, will render a statement inadmissible. The second area covers statements made under compulsion and the first covers those which are given without the required warning. The reason for excluding the latter arises out of its possible untrustworthiness, while the former is not predicated on that premise. Here we have a clear-cut issue as this case furnishes a classic example of a suspectee making a statement when there is no compulsion exercised, but there is a failure to warn present. The two problems thus posed are: (1) Who makes the final determination on the admissibility of the statement when inadmissibility depends solely on failure to warn and (2) is there evidence to support the finding?

"Article 51 (*b*) provides as follows:

'The law officer of a general court-martial and the president of a special court-martial shall rule upon interlocutory questions, other than challenges, arising during the proceedings. Any such ruling made by the law officer of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of accused's sanity, shall be final and shall constitute the ruling of the court; but the law officer may change any such ruling at any time during the trial. Unless such ruling be final, if any member objects thereto, the court shall be cleared and closed and the question decided by a vote as provided in article 52, viva voce, beginning with the junior in rank.'

"Language could hardly express more clearly that the law officer's ruling on the admissibility of evidence is final and it makes no difference whether the admission is opposed for reasons of involuntariness or failure to warn. It is true that when the admission is opposed because of involuntariness, the statement may be given some preferential consideration by the members of the court-martial, but this need not be extended to failure to warn."

Therefore, I would affirm the decision of the board of review.