UNITED STATES, Appellant

v

CARL F. HIMMLER, Fireman, U. S. Navy, Appellee

9 USCMA 115, 25 CMR 377

No. 10,284

Decided April 4, 1958

*Major Charles R. Larouche,* USMC, argued the cause for Appellant, United States.

*Commander John P. Gibbons,* USN, argued the cause for Appellee, Accused. With him on the brief were *Commander H. H. Brandenburg,* USN, and *Lieutenant George L. Walker,* USNR.

## Opinion of the Court

HOMER FERGUSON, Judge:

This case comes here by certificate from The Judge Advocate General of the Navy and presents for our determination the issue of whether the president of a special court-martial should have instructed the court to redetermine, during its deliberations on the findings, the question of whether the accused's statement had been taken in violation of Article 31(b) of the Uniform Code of Military Justice, 10 USC § 831.

The operative facts which gave rise to the issue arose in the following manner. The accused was charged with, but pleaded not guilty to, five specifications of larceny and one specification of unlawful entry into an enlisted man's locker, in violation of Articles 121 and 134 of the Code, supra, 10 USC §§ 921 and 934, respectively. After presenting a *prima facie* case, trial counsel sought to introduce two statements which had been obtained from the accused, wherein guilt of the offenses charged was admitted. To lay a proper foundation for their admission, the investigators who had obtained the statements from the accused were called as witnesses.

Investigator Hill testified that he had been requested to conduct an investigation relating to several alleged thefts of money aboard the U. S. S. SAFE-GUARD. Prior to interrogating the accused, he informed him of the nature of the charges and advised him of his rights pursuant to Article 31 of the Code, supra. The accused indicated that he understood his rights, and after a short period of questioning admitted that he had entered an enlisted man's locker with the intent to steal. His verbal statements were reduced to writing by Investigator Renfrow, and were given to the accused for his perusal. After reading the statement the accused signed it in their presence. A short time later he was again questioned and admitted responsibility for the other thefts charged. A second statement was then reduced to writing which was subsequently read and signed by the accused. Hill further testified that neither threats nor promises were made and that the statements were the voluntary acts of the accused.

Defense counsel objected to the admission of these statements in evidence and the accused was called as a witness in his own behalf. He testified that he had never been read Article 31, that there had never been any mention made of it during the interrogation, and that he was not advised of the nature of the accusations against him. Hill was then recalled to the stand and frankly admitted that though he had not read Article 31 "verbatim" he had fully explained to the accused his rights under the Article. He explained that after several years of investigative work, his experience had shown that an explanation of Article 31 was "easier to comprehend" than a verbatim reading.

Investigator Renfrow was then called as a prosecution witness, and corroborated Hill's testimony that although the accused had not been read Article 31, he had been informed of the nature of the investigation and had been carefully explained his rights under the Article. He testified that the explanation given the accused took the following form: "that he didn't have to make any statements or answer any questions which might tend to incriminate him. That any questions or statements that he did make could be used as evidence against him in a trial by court-martial. We also advised that he was entitled to counsel if he so desired or he felt that he needed it. After that we asked him if he understood his rights, and he said that he did." Defense counsel vigorously objected to the statement's

admission on the ground the accused had not been properly warned under Article 31(b) and in particular that he had never been advised "of the nature of the accusation." The court closed to consider this objection and upon reopening, the president announced that the defense objection had been overruled. The statement was then admitted in evidence. Prior to deliberating on the findings, the president instructed the court on the elements of the offense charged and the mandatory instructions in accordance with Article 51(c) of the Code, supra, 10 USC § 851. The instructions contain no further mention of the statement. The court-martial subsequently found the accused guilty as charged.

A Navy board of review set aside the conviction and ordered a rehearing because of the failure of the president to "instruct the court on the limited effect of his ruling admitting the confession in evidence." We agree with the decision reached by the board of review. At the threshhold all parties agree that no issue of voluntariness was raised and that the only dispute concerning admissibility was over an alleged failure to warn under Article 31(b), supra. Our examination of the record supports this conclusion.

The Government's chief argument is that the president's ruling on admissibility was final and conclusive on that question, and, therefore, no need existed to instruct the court that it could redetermine the question of whether the statement was obtained without the warning required under Article 31(b), supra. It seeks to support this contention by reliance upon the provisions of Article 51(b), Uniform Code of Military Justice,[1] supra. A similar contention was urged in United States v Williams, 7 USCMA 434, 22 CMR 224,

which, like the present case, involved a ruling by the president of a special court-martial. There, the accused's confession was challenged as having been involuntarily obtained. After evidence was presented on this issue and argument made, the president admitted the confession in evidence subject to objection by any member of the court. Neither at that time, nor in his final instructions did he advise the court that it could consider the evidence of voluntariness in its deliberations on the guilt or innocence of the accused. In reversing the conviction on the grounds of instructional insufficiency, we completely rejected the contention voiced here. We there said:

"A ruling by the president on the admissibility of a confession is subject to objection by any court member. Article 51(b), Uniform Code of Military Justice, 50 USC § 626; United States v Pulliam, 3 USCMA 95, 11 CMR 95. Consequently, if a member objects, the matter must be decided by vote of the court. Of course, the failure to object to a ruling admitting a confession indicates the members' conclusion that it was properly obtained. But the absence of an objection does not establish that the members know they can again consider the question in their deliberations on the findings. As a practical matter, a court member may have difficulty mentally separating his agreement with the president's ruling on the legal sufficiency of the evidence of voluntariness for the purpose of admitting the confession from his individual determination of factual sufficiency in regard to the accused's guilt or innocence (see United States v Dykes, supra, page 741), but it is important that he know of his right to do so. A contested question of ad-

---

[1] "The law officer of a general court-martial and the president of a special court-martial shall rule upon interlocutory questions, other than challenge, arising during the proceedings. Any such ruling made by the law officer of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of accused's sanity, is final and

constitutes the ruling of the court. However, the law officer may change his ruling at any time during the trial. Unless the ruling is final, if any member objects thereto, the court shall be cleared and closed and the question decided by a voice vote as provided in section 852 of this title (article 52), beginning with the junior in rank."

missibility is decided by a simple majority of the members, but a determination of guilt demands the concurrence of two-thirds of the members. Article 52, Uniform Code of Military Justice, 50 USC § 627. Since a court member is not presumed to know the law (United States v Keith, 1 USCMA 442, 4 CMR 34), it is reasonable to assume that if an objection is interposed but overruled by a majority vote, no member would know, in the absence of instruction, that he can reconsider the matter in his later deliberations on the findings.

"Here, there was no objection by any member. Hence, it is arguable that all members concurred in the conclusion of voluntariness. Therefore, it would be idle to suppose that, in the absence of additional evidence, they would change their minds during their consideration of the findings. This view, however, deprives the court members of the opportunity to reappraise the evidence of voluntariness. See United States v Trede, 2 USCMA 581, 10 CMR 79. Concededly, none of the members may change their minds, but it is not unlikely that at least some of them might. We cannot disregard the fact that a member's decision to adhere, or to object, to a ruling by the president is made with much less deliberation than his decision on the accused's guilt or innocence. A less hurried and a more thorough evaluation of the evidence might lead him to a different conclusion. In our opinion, therefore, the president's failure to instruct the court members of their right to consider the voluntary nature of the confession during their deliberations on the findings deprived the accused of a substantial benefit."

In its final agrument the Government seeks to distinguish for purposes of instructional guidance between voluntariness on the one hand and failure to warn on the other. It acknowledges that where the former situation is raised, a duty exists to instruct the court members of their right to consider the voluntary nature of a confession during their deliberations on the findings. United States v Williams, supra. It can see

118

no valid reason, however, why the opportunity to reappraise is necessary when the issue only concerns a failure to warn. Furthermore, it urges that permitting a redetermination of the interlocutory issue would constitute a bad practice which would "make a shambles of orderly proceedings, orderly thinking and orderly administration of justice." The specific objections are that it would encumber the court's final deliberations with additional issues, that it would detract from what should be the court-martial's primary concern at that stage of the trial and that neither the parties nor appellate bodies would know what was considered by the court as competent evidence. Oddly enough, these very same arguments could also be made as reasons for not submitting the issue of voluntariness for redetermination. We are unimpressed with the force of these arguments. In United States v Powell, 8 USCMA 381, 24 CMR 191, a confession was admitted in evidence over an objection that the accused had not been warned of his rights prior to making the statement. In admitting the statement, the law officer advised that its voluntariness constituted a matter the court should consider in determining what weight if any to give to the statement and that it should be given weight only to the extent it was believed to be true. We held that such an instruction was erroneous under the rule laid down in United States v Jones, 7 USCMA 623, 23 CMR 87, that a court must reject a statement *in toto* if it finds that it was involuntarily obtained. The error in that case was compounded by the law officer's failure to highlight the issue of whether the statement was obtained without a warning required by Article 31, supra. In this regard, we said: "that if an issue is raised concerning whether or not a statement was taken in violation of Article 31, supra, the court-martial must be advised it may only give weight to the statement if it first finds that it was made in accordance with the provisions of the Article."

It follows, therefore, that if the president of a special court-martial must instruct that the court may redetermine the issue of voluntariness in its deliber-

ations on guilt or innocence, United States v Williams, supra, he must likewise give a similar instruction when an Article 31 issue is raised. United States v Powell, supra. We can find no basis in either law or logic why one rule should apply when voluntariness is raised, and another where the issue of failure to warn is present. The failure to advise the court of its right to reappraise in either situation where raised will spoil a conviction.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result for the reason that United States v Powell, 8 USCMA 381, 24 CMR 191, and United States v Williams, 7 USCMA 434, 22 CMR 224, are the law of the Court. Cf. United States v Dison, 8 USCMA 616, 25 CMR 120. However, in the views I expressed in United States v Gibson, 3 USCMA 746, 14 CMR 164, and United States v Powell, supra, I believe the interested reader will find some "basis in either law or logic why one rule should apply when voluntariness is raised, and another where the issue of failure to warn is present."