UNITED STATES, Appellee

v

RICARDO SANCHEZ, Private, U. S. Army, Appellant

11 USCMA 216, 29 CMR 32

No. 12,913

Decided February 5, 1960

*First Lieutenant Robert D. Stiles* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr, Captain Arnold I. Melnick, First Lieutenant Herbert R. Brown,* and *First Lieutenant Thomas J. Simmons.*

*First Lieutenant Avram G. Hammer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, First Lieutenant Frank J. McGee,* and *First Lieutenant Wade H. Sides, Jr.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Pretermitting an attempt specification which is of no relevancy to the action, the accused was charged with one bestial act with a chicken and a lewd and lascivious act with a three and one-half-year-old female child, both in contravention of Article 134 of the Uniform Code of Military Justice, 10 USC § 934. On his original trial he was found guilty and sentenced to a dishonorable discharge, total forfeitures, and to be confined for a period of five years. Because of an instructional error, the convening authority set aside the findings and sentence and ordered a rehearing. On the second trial, the accused was again convicted of the first mentioned crime but, because of a deletion ordered by the law officer and an exception made by the court-martial, a finding on the offense with the minor child was returned which differed in phraseology from the original specification. The second court imposed a five-year sentence of confinement with accessories. Thereafter the convening authority approved the findings but ameliorated the sentence by reducing the period of confinement to three years. A board of review affirmed, and we granted accused's petition for review to consider three assignments of error. They, together with the facts material to each, will be stated and discussed separately.

The first assigned error raises the question of whether one specification alleges an offense. The crime was stated in the following language:

"In that Private Ricardo Sanchez, US Army, Medical Detachment, 2nd General Hospital, Landstuhl, Germany, did at Landstuhl, Germany, on or about 23 August 1957, wrongfully and unlawfully commit an indecent act with a chicken by penetrating the chicken's rectum with his penis with intent to gratify his lust."

In support of this assignment, the defense argues generally that the specification does not allege sodomy under Article 125, Uniform Code of Military Justice, 10 USC § 925; because the acts proscribed there are limited to animals. The contention then proceeds with the the the hypothesis that the specification does not state an offense of indecent and lascivious acts with another contrary to Article 134 of the Code, supra, for the word another is limited to human beings. Having thus excluded those two offenses by the process of claiming one element is missing from each, the defense sums up its position by asserting there is no offense alleged. The argument may be ingenious but it misses the point of importance. We are not here concerned with determining whether the specification sets out all the elements of either of the mentioned offenses. It can well be argued that the crime of sodomy is properly alleged, but we need not decide that question for all that is presently under consideration is whether any offense has been stated. In United States v Snyder, 1 USCMA 423, 4 CMR 15, we were met with the claim that Congress, in enacting Article 134, supra, did not intend to regulate the wholly private moral conduct of an individual, and the same thesis seems to be advanced in this instance. We are not disposed to deny the validity of that contention, but we do point out that when it enacted the general

**217**

article, Congress intended to proscribe conduct which directly and adversely affected the good name of the service. And most assuredly, when an accused performs detestable and degenerate acts which clearly evince a wanton disregard for the moral standards generally and properly accepted by society, he heaps discredit on the department of the Government he represents. While it is true that in *Snyder* we were measuring the accused's behavior to determine whether it was to the prejudice of good order and discipline in the services, that difference in the two cases is immaterial. Here the touchstone is whether accused's conduct was of such a nature as to bring discredit upon the service, and it would be an affront to ordinary decency to hold that an act such as the one here committed was not criminal *per se* and would not dishonor the service in the eyes of a civilized society. We, therefore, conclude that the facts alleged in the specification state a military offense under Article 134.

The second issue concerns the other offense and arose in the following manner. The original specification was worded thusly:

"In that Private Ricardo Sanchez, US Army, Medical Detachment, 2nd General Hospital, Landstuhl, Germany, did at Landstuhl, Germany, on or about 24 August 1957, wrongfully commit an indecent, lewd and lascivious act with Elizabeth D. Oberdorfer, a female under sixteen years of age, by exposing his penis and attempting to put it into the mouth of Elizabeth D. Oberdorfer."

Trial defense counsel, in seeking appropriate relief at the time of arraignment, moved to strike the words "a female under sixteen years of age." He argued that the specification alleged only indecent or lewd acts with another, permitting but five years incarceration, for it failed to set forth the specific intent requisite to the crime of committing an indecent act with a child under sixteen years which carries a maximum penalty of seven years confinement. Therefore, he

**218**

contended that the phrase he desired stricken was objectionable surplusage which would inflame the court-martial to accused's prejudice. The law officer granted the motion, thus leaving the specification reading as follows:

"In that Private Ricardo Sanchez, US Army, Medical Detachment, 2nd General Hospital, Landstuhl, Germany, did, at Landstuhl, Germany, on or about 24 August 1957, wrongfully commit an indecent, lewd and lascivious act with Elizabeth D. Oberdorfer, by exposing his penis and attempting to put it into the mouth of Elizabeth D. Oberdorfer."

When the court-martial returned its findings, it excepted the words "and attempting to put it into the mouth of Elizabeth D. Oberdorfer." Accordingly the approved finding, as modified, read:

"In that Private Ricardo Sanchez, US Army, Medical Detachment, 2nd General Hospital, Landstuhl, Germany, did, . at Landstuhl, Germany, on or about 24 August 1957, wrongfully commit an indecent, lewd and lascivious act with Elizabeth D. Oberdorfer, by exposing his penis."

Appellate defense counsel take the approach that, because of the exceptions, the specification does not allege an offense. We believe the issue is not one of pleading but, rather, whether the court-martial found the accused guilty of any recognizable offense which was not at variance with the one alleged. While appellate defense counsel assert vigorously that the findings as returned do not embrace the offense of indecent or lewd acts with another, we conclude to the contrary. True it is that under some circumstances a mere exhibition of private parts might be accidental or no more than indecent exposure, but under the facts of this case the exposure was indecent, lewd, and lascivious. While the finding of the court-martial excluded any attempt of fellation, even appellate defense counsel admit that the specific act included in the finding could, under certain circumstances, be indecent. And it is to be remembered that a finding of guilty need not detail each bit of

evidence which supports it. In determining the sufficiency of the findings to support the ultimate conclusion that the exposure was indecent, we can look at all the facts which were before the court and which were not excepted by the findings. Here the record shows that the victim was approximately three and one-half years old, she was taken to a secluded area, and the accused there exposed his private parts at the same time he was cradling the child in his arm. In our view, those facts are adequate to support a finding of the serious offense of indecent and lewd acts with another and the additional finding that the acts were of such a character as to be discrediting to the military service.

While appellate defense counsel argue that this particular offense requires a physical touching, even if we were to adopt that position we would not be constrained to rule in accused's favor. Again we mention that we are dealing with findings which need not embrace all the means used by an accused in commiting a crime. Here the evidence shows a physical contact between the accused and the victim at the very time the crime was being committed. Although the court-martial found the accused did not attempt to place his penis in the mouth of the infant, it did not exclude other means of physical contact.

The third issue challenges one of the instructions given by the law officer. To present the question in an understandable manner, it is necessary that a few facts be related. The Government established by a number of witnesses all of the essential elements of the two offenses. In addition, it offered into evidence accused's pretrial statement which constituted a complete confession to each of the crimes. The accused is of Mexican descent and he objected to the introduction of the statement in evidence for the reason that he had a limited understanding of the English language and did not appreciate fully the warning given to him by the investigators pursuant to Article 31, Uniform Code of Military Justice, 10 USC § 831. In opposition to this contention, the Government established that he was born in Los Angeles, California, attended English speaking schools for nine years, served in the United States armed forces for a total of six years, read and understood notices on the bulletin boards, was a plumbers' and mechanics' helper in civilian life and conversed with his supervisors in English. Significantly, some six witnesses, including a medical expert called by the accused, testified to accused's fluency in the English language. It is, therefore, apparent on the face of the record that there was little merit to accused's contention that he lacked the mental capacity to understand the warning given. However, out of an abundance of caution, the law officer elected to submit to the court-martial members the manner in which it should deal with that issue. In that regard, he charged them:

" . . . You may accept the statement as evidence *only if you determine that it was voluntary.* If you determine that the statement was involuntary, you must reject it and disregard it as evidence in the case. If you further determine that a part of the written statement was not made by the accused but are facts supplied solely by the interrogrator, then you should give it no weight whatsoever." [Emphasis supplied.]

And he then went on to say the following:

"With reference to the evidence that the accused was unable to comprehend the English language at the time he was advised of his rights under Article 31 by Sgt Gabbett, you are instructed that *the burden of proof is upon the prosecution to establish not only that the accused was advised of his rights under Article 31 but also that he was mentally able to understand his rights.* If, as a matter of fact, the accused's inability to comprehend the English language was of such a degree that he was mentally unable to understand his rights, the statement obtained under such circumstances was obtained in violation of Article 31, in which case no weight whatever may be given to the statement. Consequently, unless you find that the accused was mentally able to understand his rights under Article

31 at the time he was advised of such rights by Sgt Gabbett, you should find a failure to comply with Article 31 and give no weight whatever to the statement obtained under such circumstances." [Emphasis supplied.]

The argument is advanced that the instruction is erroneous in that it does not require the court-martial to find beyond a reasonable doubt that the accused was mentally able to understand his rights under Article 31 at the time he was advised. The instruction sets out the law as it was announced by this Court in United States v Jones, 7 USCMA 623, 23 CMR 87, but it is not specific as to whether the court-martial should find voluntariness by a preponderance of the evidence or beyond a reasonable doubt. At the present time, we need not determine which is the appropriate yardstick on an interlocutory issue for the question was not properly preserved at the trial level.

The law officer in this case reduced his proposed instructions to writing and held an out-of-court conference with trial and defense counsel, the accused and a reporter. This is an extract from the record of that hearing:

"The proceedings will reflect at this time that the law officer's instructions to the court were fully discussed by counsel for both sides and the law officer and that it is the law officer's understanding at this time that counsel for both sides have no objections to the instructions to be given, that no further special instructions are requested, with one exception, and that is that defense counsel has reserved the right to comment on one portion of the law officer's instructions."

Defense counsel raised an objection to the definition of reasonable doubt but, aside from that, he expressed complete satisfaction with the proposed instructions. Thereafter they were read to the court-martial members and, upon completion of the charge, the following colloquy occurred:

"This concludes my instructions. I would like to ask counsel for either side if they desire any instructions not briefly [sic] requested and if they have any objections not previously made to the instructions as given.

"TC: None by the prosecution.
"DC: None by the defense."

There is a well-settled rule of law in civilian criminal practice to the effect that where a defendant makes no objection to the judge's charge, takes no exceptions and counsel announces his satisfaction with the court's instructions, a defendant cannot complain of the charge for the first time on appeal. That principle is modified slightly to take care of those instances where a miscarriage of justice would result if the error was not noticed. In United States v Dykes, 5 USCMA 735, 19 CMR 31, we followed that rule in a similar case and, even though the case is no longer the law on the appropriate content of the instruction, the principle here in issue has not been changed. There we said:

" . . . Defense counsel in this case not only failed to object to the law officer's instructions, he declined expressly to take advantage of that functionary's specific invitation to comment on the charge as given. Certainly defense counsel's evaluation of the instructions—now urged as a ground for reversal—is entitled to weight at the appellate level. It is true that the law officer failed to achieve perfection in his advice to the court—although it is distinctly arguable that his instruction was superior to one which did no more than quote the somewhat confusing language of the Manual, recited earlier in this opinion. Under these circumstances, we find no hesitancy in holding that the failure of defense counsel to complain is fatal to the present assertion of prejudice. Hawkins v United States, 158 F 2d 652 (CA DC Cir), cert den 331 US 830, 91 L ed 1844, 67 S Ct 1347."

The possibility of there being a miscarriage of justice in this case if we apply the rule above discussed is nonexistent. The instruction construed most strongly in favor of the accused does

not set the wrong standard; it merely fails to inform the court of the precise one to be used. Had counsel desired a clarification, he should have made an appropriate request, but the posture of the evidence is so overwhelmingly in favor of a finding that the accused understood the English language that any deficiency in this regard is unimportant. The history of accused's life, including his education, his service in both the Air Force and Army, his civilian pursuits, and his ability to converse with and understand those who speak only the English tongue would cause any reasonable man to find he could understand the warning given him by the investigator. Accordingly, the weight of the evidence on the issue was far greater than merely preponderating in favor of the Government and the error, if any, is not so egregious that we must reverse to prevent an injustice.

For the foregoing reasons, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

At a rehearing before a general court-martial, the accused was found guilty of carnal connection with a fowl and wrongfully commiting an indecent, lewd, and lascivious act by exposing himself to a named person, both delicts being alleged as violations of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to dishonorable discharge, confinement at hard labor for five years, and forfeiture of all pay and allowances. With some reduction in the sentence, intermediate appellate authorities affirmed, and we granted review on the issues whether the specifications charged alleged offenses and whether the law officer's instructions concerning the consideration by the court of the voluntary nature of accused's confession were proper.

Accused initially argues before us that the specification alleging that he had carnal connection with a fowl does not state an offense under the Code. I join with my brothers in their conclusion that such conduct tends directly to reflect discredit upon the armed forces and that its recital in the specification delineates an offense in violation of Code, supra, Article 134. I trust, however, their characterization of accused's behavior as "criminal *per se*" is not intended to detract from the formerly expressed requirement that court members be instructed that they must find as a fact such acts are discreditable. See United States v Grosso, 7 USCMA 566, 23 CMR 30; United States v Wiliams, 8 USCMA 325, 24 CMR 135; and United States v Gittens, 8 USCMA 673, 25 CMR 177. Moreover, as the question whether accused's acts amount to sodomy, in violation of Code, supra, Article 125, 10 USC § 925, is not presented by this record, I do not think it necessary now to decide that issue. Cf. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 281, and Burdick, Law of Crime, § 876, *et seq*. Thus, I prefer to limit my concurrence in the majority's disposition of this matter to its ultimate holding that the specification alleges an offense in violation of Code, supra, Article 134.

The second question presented for our determination is whether the other specification, as modified by the law officer upon motion and the court members in announcing findings of guilty by exceptions, also alleges an offense in violation of the Code. While I have serious reservations concerning whether the crime as found amounts to more than the offense of indecent exposure, it is certain the verdict with respect to this specification could have had no impact upon the accused's substantial rights. The findings of the court-martial did no more than set forth the conclusion of the members concerning those factual allegations which they believed to be proven beyond reasonable doubt. The law officer, in view of the sentence imposed at the original trial, advised the court that the maximum penalty which might be imposed in this case was dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for five years. He set forth this instruction without reference to the fact that a rehearing was being conducted. Cf. United States v Jones, 10

USCMA 532, 28 CMR 98. As that was also the maximum punishment for the offense of having carnal connection with a chicken, the question of the precise offense involved in the specification with which we are now concerned could not have affected the court's deliberations. Compare United States v Eschmann, 11 USCMA 64, 28 CMR 288. Hence, I believe we engage in little more than a rhetorical exercise when we sift the record in an effort to find a serious offense within the court-martial's verdict. Thus, I am unable to join my brothers in their rationale concerning this issue.

It is upon the answer to the third question presented by accused's petition that I find myself completely at odds with a majority of the Court. My brothers do not reach the basic controversy over the sufficiency of the law officer's instructions concerning the voluntariness of accused's confession, for they conclude the record shows an informed waiver of any deficiency which might be involved. Moreover, I find a disposition on their part to give no weight to accused's declaration that he lacked a sufficient command of the English language to understand the advice concerning his rights under Code, supra, Article 31, 10 USC § 831, given him by criminal investigators. In my opinion, an issue was raised concerning the matter and I would not invoke the doctrine of waiver.

With respect to the issue being presented, the accused testified that his command of English was very poor and that he was unable sufficiently to comprehend the advice given him by the investigators to make a meaningful election either to remain silent or to make a statement. Indeed, the investigator who obtained the confession indicated he was concerned about whether accused, a person of Mexican descent, understood his rights. Other witnesses testified that accused consorted principally with Spanish-speaking soldiers. In rebuttal to the defense contention, the prosecution introduced extensive evidence tending to establish that accused's rights were carefully explained to him and he stated to the investigator that he understood them. Moreover, various superiors testified to accused's ability to comprehend English and to a previous acknowledgment that he was aware of his rights under Code, supra, Article 31.

In my opinion, the foregoing matters raise an issue concerning accused's understanding of the warning admittedly given him. When we refuse to give effect to his sworn declarations, regardless of the weight of the contrary testimony, we transcend our powers under the Code, supra, Article 67, 10 USC § 867, and substitute our judgment for that of the fact finders. With such a proposition I cannot agree, and I prefer to conclude that an issue is properly presented in the record and that it was incumbent upon the law officer to give the requisite instructions. See United States v Morphis, 7 USCMA 748, 23 CMR 212.

I am equally unable to agree with the proposition that the accused, by his failure to lodge an appropriate objection, knowingly waived any defect in the law officer's instructions on voluntariness. See my dissenting opinion in United States v Slamski, 11 USCMA 74, 28 CMR 298. Initially, I note that the question of the voluntariness of accused's confession is the only real issue in the case. United States v Kowert, 7 USCMA 678, 23 CMR 142. Next, the state of the law in this area is so unsettled that it is unreasonable to charge counsel with the duty of formally objecting to its delivery. Finally, the basic purpose of enforcing waivers is to require counsel to call defects to the attention of the law officer in order that corrective action may be taken at the trial level. United States v Brown, 10 USCMA 482, 28 CMR 48. As will hereinafter be shown, the law officer utilized an Army form instruction from which he had carefully deleted all reference to proof of voluntariness beyond a reasonable doubt. In view of his apparently deliberate choice, it is hard to conclude that timely objection would have caused him to utilize the standard which the defense now urges upon us, and, under such circumstances, I prefer to reach the merits of the issue before us.

The law officer's instructions on the

voluntariness of the accused's confession included the following pertinent statements:

" . . . You may accept the [accused's] statement as evidence only if you determine that it was voluntary. If you determine that the statement was involuntary, you must reject it and disregard it as evidence in the case.

. . . . .

"With reference to the evidence that the accused was unable to comprehend the English language at the time he was advised of his rights under Article 31 by Sgt Gabbett, you are instructed that the burden of proof is upon the prosecution to establish not only that the accused was advised of his rights under Article 31 but also that he was mentally able to understand his rights. If, as a matter of fact, the accused's inability to comprehend the English language was of such a degree that he was mentally unable to understand his rights, the statement obtained under such circumstances was obtained in violation of Article 31, in which case no weight whatever may be given to the statement. Consequently, unless you find that the accused was mentally able to understand his rights under Article 31 at the time he was advised of such rights by Sgt Gabbett, you should find a failure to comply with Article 31 and give no weight whatever to the statement obtained under such circumstances."

Thereafter, the members of the court-martial were informed they must be convinced of accused's guilt beyond a "reasonable doubt," and that term was extensively defined.

The instructions given by the law officer were basically those suggested by this Court in United States v Jones, 7 USCMA 623, 23 CMR 87, although we were not there confronted with the narrow question now facing us. Nevertheless, that case points out an important consideration, i. e., there are two determinations of admissibility to be made with respect to every confession and admission. First, the law officer must pass upon the question of its voluntary character. Second, the members of the court-martial must make, during their deliberations, an independent determination of the same issue. United States v Jones, 7 USCMA 623, supra, at page 628. The law officer's action is purely interlocutory, and his ruling concerning the receipt of the statement need be based only upon a preponderance of the evidence. Manual for Courts-Martial, United States, 1951, paragraphs 57g(1), 67e. In my opinion, however, a different standard must be applied by the court members in their final resolution of the same issue. Some of our language in United States v Jones, 7 USCMA 623, supra, points to that conclusion. Thus, we there said, at page 628:

" . . . [S]ince voluntariness, as well as trustworthiness, *is a factual question,* it must be determined by the jury or by the court members." [Emphasis supplied.]

Army lawyers seem to be of the same view, for, in their instructional guide for law officers, the requirement that voluntariness be proved beyond a reasonable doubt is imposed. Appendix XXI, Department of the Army Pamphlet 27–9, The Law Officer, April 1958. Moreover, although authorities are scarce, the same rule seems to have been adopted within the Federal courts. Thus, in Patterson v United States, 183 F 2d 687 (CA 5th Cir) (1950), at page 690, that part of an instruction which required the jury to give the defendant the benefit of a reasonable doubt concerning the voluntariness of his confession was characterized as "the correct rule." In Wilson v United States, 162 US 613, 16 S Ct 895, 40 L ed 1090 (1895), at page 624, language is found which bespeaks the applicability of the doctrine of reasonable doubt:

"When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury *with the direction that they should reject the confession if upon the whole evidence they are satisfied it was not the voluntary act of the defendant.*" [Emphasis supplied.]

**223**

The clearest exposition of the rule is to be found in Mora v United States, 190 F 2d 749 (CA 5th Cir) (1951), wherein Judge Rives, speaking for the Court, declared at page 752:

" . . . We think that the district court properly admitted the confession in evidence, and then by its charge, left the jury free to reject the evidence *unless the jury believed beyond a reasonable doubt that it was made freely, voluntarily and without compulsion or inducement.*" [Emphasis supplied.]

Finally, the view that the voluntariness of a confession should be found beyond a reasonable doubt logically follows from the character of such a statement. We have pointed out that voluntariness is a factual question. United States v Jones, 7 USCMA 623, supra. Once determined to be voluntary, it is frequently termed the highest order of proof. Indeed, this Court has so characterized it. United States v Monge, 1 USCMA 95, 2 CMR 1. Certainly, such an important item of evidence, tending as it does to make the Government's case irrefutable, should have the predicate upon which its admissibility and trustworthiness depends measured by the standard of proof applicable to other factual determinations in criminal causes. To me, this is the sounder approach, and I conclude that instructions on voluntariness must contain appropriate references to that doctrine. See Department of the Army Pamphlet 27–9, supra.

Turning to the instructions given in the instant case, I am at once met with the Government's argument that the court members, within the four corners of the law officer's instructions, were advised they must determine voluntariness beyond a reasonable doubt. That contention must fail. The law officer's omission of any reference to the standard in his instructions on the confession is conspicuous. While he adverted elsewhere in his advice to the doctrine of reasonable doubt, he specifically limited it to the ultimate question of accused's guilt or innocence to proof of the elements of the offenses charged. Rather than curing his failure to provide an appropriate measure in the confession instructions, his specific references to the rule in other parts of his advice had the effect of highlighting the absence of the requirement. Thus, I conclude that his instructions were prejudicially deficient, and reversal must follow.

I would reverse the decision of the board of review and order a rehearing.