UNITED STATES, Appellee

v

THOMAS H. DAY, Sergeant, U. S. Army, Appellant

11 USCMA 549, 29 CMR 365

No. 13,731

Decided June 24, 1960

Major *Edward Fenig* and *First Lieutenant Richard P. Nee* were on the brief for Appellant, Accused.

*Lieutenant Colonel James G. McConaughy* and *Major John G. Lovrien* were on the brief for Appellee, United States.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of assault, in violation of Article 128 (Charge II and its specification), and two specifications alleging that he loaned money to fellow soldiers at usurious rates of interest, in violation of Article 134 (Charge I and its specifications), Uniform Code of Military Justice, 10 USC §§ 928, 934. Each of the latter alleges that the accused loaned money for a one-month period at "a usurious and unconscionable rate of interest." In the first specification, the amount loaned was $30.00 and the interest was $30.00; in the second, the loan was $10.00 and the month's interest $10.00. In each instance the borrower was another soldier.

Before the board of review, appellate defense counsel contended that usury contemplates interest in excess of a statutory rate. Military law, he said, prescribes no rate of interest and, consequently, the loan specifications do not allege any cognizable offense. The board of review rejected the argument. We granted review to consider the defense contention.

The Government maintains that lending money at an exorbitant and unconscionable rate of interest constitutes a breach of good order and discipline or reflects discredit upon the armed services in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. It argues that such conduct "has constituted a . . . military offense for nearly 150 years." The argument is supported by an excerpt from Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint. In the

**549**

text of his book, Colonel Winthrop says that conduct unbecoming an officer and gentleman may consist of "[a]buse of authority over soldiers by fraud or exactions practiced upon them, or by requiring or influencing them to do illegal acts." Ibid, page 716. Several footnote citations are provided in support of the text statement, among them is the following: "By exacting from soldiers excessive usurious interest, (25 *per cent.,*) on loans made to them—G.O. of Dec. 24, 1811: By exacting from soldiers double the amount, at the next pay day, for sums of money previously loaned. G.O. 4, Dept. of the Gulf 1866." It is worth noting that the second illustration does not say the transaction is usurious; and the first citation does not show the absence of a statute or regulation defining the legal rate of interest. In any event, Winthrop's statement refers to conduct unbecoming an officer and gentleman; it is arguable that such conduct does not necessarily equate to conduct to the prejudice of order and discipline or conduct reflecting discredit upon the services. See United States v Underwood, 10 USCMA 413, 27 CMR 487, dissenting opinion by Judge Ferguson. However, usury is recognized as an offense in the present Manual for Courts-Martial, United States, 1951. There is a separate form of specification for charging the loan of money at a usurious rate, and the Table of Maximum Punishments lists a specific penalty for the act.[1] Earlier Army manuals contained similar provisions and the case books show several prosecutions based upon usurious transactions. United States v McNeil, 48 BR 287; United States v Freimuth, 25 BR 369; United States v Bawsel, 13 BR 249. But no provision of the Uniform Code specifically prohibits military personnel from demanding or receiving interest on a loan in excess of a specified rate. Also, our attention has not been called to any regulation on the subject and our own research has disclosed a provision applying only to Navy personnel. See United States Navy Regulations, Article 1260 (1948).

Whatever its ancient antecedents, in modern American law whether a particular rate of interest is ██ usurious depends upon a ██ statute. American Jurisprudence recites the rule as follows:

". . . However, the doctrine that any interest is usurious was never adopted in this country, and in the absence of any statutory or local constitutional limitation upon the amount of interest which may be exacted, parties to a contract for the use of money may validly agree for the payment of interest at whatever rate they see fit.

"The common law of England, as adopted and approved in the United States, has never forbidden the exaction of usury on loans of money as a matter of general law or public policy, irrespective of statute, and at the present time usury must be regarded as merely malum prohibitum, resting entirely upon statutory regulation and prohibition, and not as malum per se." [55 Am Jur, Usury, § 3.]

Without some definite provision limiting the rate which the lender may receive, the rate charged cannot be called usurious. 55 Am Jur, Usury, § 12; 91 CJS, Usury, § 5b. It follows, therefore, that since military law in general, and Army regulations in particular, provide no legal rate of interest, the exaction of any given rate cannot be described as illegal and, therefore, usurious. The interest alleged in the specifications here may indeed be unconscionable but it is not unlawful. As early as United States v Snyder, 1 USCMA 423, 427, 4 CMR 15, we pointed out that the military penal code does not "regulate the wholly private moral conduct of an individual." See also United States v Gillin, 8 USCMA 669, 25 CMR 173; cf. United States v Sanchez, 11 USCMA 216, 29 CMR 32.

The findings of guilty of Charge I and its specifications are set aside and the Charge and specifications are or-

---

[1] Forfeiture of two-thirds pay per month for three months. Manual for Courts-Martial, United States, 1951, paragraph 127c, page 226.

dered dismissed. The sentence is set aside and the record of trial is returned to the board of review for reassessment upon the basis of the remaining findings of guilty.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The issue here concerns action instituted for alleged violations of Article 134, Uniform Code of Military Justice, 10 USC § 934, which *inter alia* proscribes acts that are to the prejudice of good order and discipline in the service, and I believe the specifications allege offenses under that arm of the Article. As my associates concede, the loaning of money by officers to soldiers at excessive rates has for 150 years been considered as an offense under the Articles of War which prohibited conduct unbecoming an officer and a gentleman. But, say my brothers, a different standard should be applied to noncommissioned officers. With that I disagree, for oppression of the needy by those who are more fortunate, regardless of rank, has no place in the military service and we should not create a climate favorable to its growth.

Most every state has enacted laws to punish a lender for exacting an unreasonable rate of interest from the debtor. The laws are harsh, but their purpose is to protect those unfortunate individuals who, because of need or adversity, are compelled to borrow money from the affluent. The military community has no civil processes by which it can protect the serviceman in dire circumstances from a Shylock who can ply his trade because adversity creates necessity and necessity demands immediate action regardless of legal niceties. But that is not to say that the lack of a Federal statute bars prosecution, for the presence of extortionate creditors and frantic debtors in units has a direct and adverse impact on the good order of the military society. Any unit commander who permits noncommissioned officers to loan money to their subordinates at excessive rates of interest soon learns that disrespect, hatred and rancor supplants respect, esteem and affection. And it should go without saying that good order cannot be nurtured in a climate of indignant displeasure by those servicemen who, because of temporary insolvency, are forever indebted to the merciless moneylender.

Almost two thousand years ago the moneylenders were driven from the temples because of their unwholesome effect on society and when they seek to make outrageous profit from human miseries they should be cast out from the services. In that regard, I need not be concerned about the claim that there is no offense because the measuring rod for usurious rates has not been fixed by Congress. Most state legislatures have considered the problem and fixed a yardstick and while there is some variation between jurisdictions, the difference is infinitesimal when considered by the transactions in this case. We are not here faced with agreements that might have some color of legality, for if the deals which were made the basis of the specifications were to be considered in the ordinary course of banking transactions, all the victims were required to pay was interest at the rate of 1200 percent per annum. Even to state the arrangement is shocking and a bargain of that nature is— as my colleagues concede—unconscionable, oppressive and offensive. Moreover, if loaning of money at that rate was practiced with regularity, it not only would lead to disorders, it might incite mutiny.

For the foregoing reasons, I would affirm the convictions.