UNITED STATES, Appellee

v

GEORGE J. MORSE, Private, U. S. Army, Appellant

14 USCMA 532, 34 CMR 312

No. 17,338

May 1, 1964

*First Lieutenant J. Philip Johnson* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk, Captain Charles W. Schiesser, Captain James Joseph McGowan,* and *Captain Robert E. Shepherd, Jr.*

*First Lieutenant John C. Cortesio, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

QUINN, Chief Judge:

This is an appeal from the board of review's affirmance of a conviction for arson and assault and battery, in violation of Articles 126 and 128, Uniform Code of Military Justice, 10 USC

§§ 926 and 928, respectively. The only issue is the adequacy of the law officer's instructions on the matters the court-martial could consider as to a pretrial confession admitted into evidence.

On March 18, 1963, a fire broke out in the latrine of the stockade at Fort Sill, Oklahoma. After the fire was extinguished, an examination indicated it was incendiary in origin. That evening, the accused, a prisoner in the stockade, was questioned about the fire. He refused to make any statement. The next morning, however, he confessed to a Criminal Investigations Detachment Agent, Samuel D. Branham, that he had set the fire; he denied knowing whether fellow prisoners Frankie Dean Boyer and Bobby Ray Blevins had also played a part in starting the fire. His oral statement was typed by Agent Branham and the writing was sworn to, and signed by, the accused. Testimony by Branham and recitals in the written statement indicate the accused was preliminarily advised of his rights under Article 31 of the Code, supra, 10 USC § 831; that he understood those rights; and that he made the statement freely and voluntarily.

At trial, the accused objected to the admission into evidence of the confession on the ground it was obtained in violation of Article 31. He also repudiated the confession as false; and he denied taking any part in the arson. Some of the accused's testimony seems to be inconsistent with the contention that the statement was obtained in violation of the Article. For example, at one point in his testimony the accused said he confessed because he "thought it was a good chance of . . . getting out of the Army"; elsewhere in his testimony he maintained he was "prompted" to confess "to protect Blevins and Boyer." These purposes indicate an unfettered freedom to speak or remain silent, and an affirmative desire to make a statement. See United States v Smith, 3 USCMA 680, 14 CMR 98. Be that as it may, the objection to the admission into evidence of the confession, which provides the basis of this appeal, is that the accused was "confused" as to his right to make a statement or to remain silent, and as a result of that confusion he made the confession.

Agent Branham testified that before the statement was taken from the accused, he again advised the accused of his rights under Article 31 and the accused "indicated he understood" them. He then asked the accused if he "was willing to give a statement"; the accused replied: " 'Yes, I am willing to give the whole story.' "

On cross-examination, defense counsel asked Branham if, during the course of the investigation, the accused had "claimed his rights under the Fifth Amendment." Branham said the accused had done so "on the evening of 18 March." He maintained, however, the accused did not "mention" the Fifth Amendment as such, but rather the "words he used was [sic] he didn't want to make a statement, that he would give me his name, rank and serial number." The accused made no statement at that time. The accused's version was somewhat different. He contended he told Branham he "would stand on Article 31 and on the grounds of the Fifth Amendment." Branham advised him he "couldn't stand on the Fifth Amendment"; that he had "no rights" under the Amendment. This remark confused him because he thought Article 31 and the Fifth Amendment "were the same thing." The next day, when he was again interviewed by Branham, he was still confused, and still thought "Article 31 and the Fifth Amendment were the same." He admitted he was "reminded" of his rights under Article 31, and that he read the written confession which, among other things, had in bold type at the top, the statement, "I understand that I do not have to make any statement whatsoever and any statement I make may be used as evidence against me." He maintained, however, that when he actually swore to, and signed, the confession he "was mixed up, puzzled"; and he "thought . . . [he] had to say something."

The law officer instructed at length on the matters to be considered by the court-martial in its deliberations on

the accused's pretrial confession. In pertinent part he said:

"You are further advised, in this connection, that this out-of-court statement of the accused is not voluntary if it was obtained from the accused through the use of coercion or unlawful influence. You will also consider that it is not voluntary if you find that, while the accused was suspected of an offense, it was obtained from him through the interrogation by Specialist Branham, a person subject to the Uniform Code of Military Justice, who did not first inform the accused of the nature of the accusation and advise him that he did not have to make any statement regarding the offense of which he was accused or suspected, and that any statement made by him might be used as evidence against him in a trial by court-martial. Accordingly, unless you are convinced beyond a reasonable doubt that Specialist Branham did comply with Article 31, Uniform Code of Military Justice, you should consider the accused's out-of-court statement as involuntary and reject it.

. . . . . .

". . . Accordingly, since the accused contends that his advice was confusing, such that he did not understand his rights, you are instructed that, unless you are convinced beyond a reasonable doubt (1) that the accused was properly advised as to his rights under Article 31, as I have instructed you, and (2) that he did understand his rights under Article 31 at the time of his advice by Specialist Branham, you should find a failure to comply with Article 31 and give no weight whatever to the statement obtained under such circumstances."

The accused contends the instructions suffer from material deficiencies. He maintains the failure to explain the relationship between the Fifth Amendment and Article 31 left in doubt the legal basis for his claim that he was confused as to his rights under Article 31; and he implies that this doubt would incline the court-martial to disregard

534

his testimony. He also maintains the instructions fail to differentiate clearly the defense theory that while the initial explanation of Article 31 by Agent Branham at the interview on March 18 might have been understood by the accused, and thus satisfied the requirements of the Article at the moment of the advice, the later representation by Branham that the accused had no rights under the Fifth Amendment so confused the accused that when he executed the confession the next morning he did not then understand his right to remain silent. Neither argument has merit.

Article 31 goes "much further than the Fifth Amendment" in that it requires, among other things, that the accused be preliminarily advised that he does not have to make any statement. United States v Kemp, 13 USCMA 89, 97, 32 CMR 89. And, it must appear the accused understands his right to speak or to remain silent. United States v Hernandez, 4 USCMA 465, 16 CMR 39; United States v Erb, 12 USCMA 524, 31 CMR 110; cf. United States v Sanchez, 11 USCMA 216, 220, 29 CMR 32. The issue urged by the defense was that the accused was so "confused" by Agent Branham's purported comment on the Fifth Amendment, he did not understand his rights under Article 31. That issue was clearly defined in the instructions. The court-martial was specifically advised it had to find beyond a reasonable doubt that Agent Branham advised the accused "he did not have to make any statement"; and it was told it had to be convinced beyond a reasonable doubt "that he did understand his rights . . . at the time of his advice by Specialist Branham."

Turning to the contention that the instructions failed to define clearly the difference in circumstances between the "time of . . . advice" by Branham to the accused of his rights under Article 31, and the time of actual execution of the confession, we perceive no reasonable basis upon which to conclude, as does the accused, that the court-martial might have, under the instructions

given, confined the "time of his advice" to the March 18 meeting between Branham and the accused. The accused made no statement at that interview. The only statement in evidence was that of March 19. At the beginning of his instructions on the matter, the law officer referred specifically to that statement. Later, he advised the court-martial it could accept "the statement as evidence" only if it determined, beyond a reasonable doubt, that the accused understood his rights "at the time of . . . advice" thereon by Branham. In context, the "time of . . . advice" necessarily meant the time at which the accused actually made the statement.

Some comments in the instructions were, perhaps, inappropriate, but to an unusual degree the instructions fully and fairly presented the issues raised by the evidence.[1] Nothing included in them, or omitted from them, justifies reversal of the accused's conviction.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.

---

1. The law officer noted that his earlier ruling admitting the confession into evidence did not "conclusively establish the voluntary nature of the statement." This statement is inappropriate in an instruction of this nature. United States v Cotton, 13 USCMA 176, 32 CMR 176.