UNITED STATES, Appellee

v

JAMES O. PARKER, Airman Second Class,
U. S. Air Force, Appellant

8 USCMA 704, 25 CMR 208

**704**

No. 10,159

Decided February 14, 1958

*Captain Norman J. Nelson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried and convicted of one charge of larceny and fourteen specifications of false and fraudulent claims, in violation of Articles 121 and 132, Uniform Code of Military Justice, 10 USC §§ 921 and 932, respectively. The special court-martial sentenced him to a bad-conduct discharge, forfeiture of $50 per month for nine months, and confinement for nine months. The convening authority, in approving the sentence, reduced the period of forfeitures and confinement to six months. The board of review affirmed, and we granted review to consider three questions.

I

The first issue on appeal is concerned with the instructions relating to the Article 132 violation. The president instructed that an essential element of the offense was the knowledge of the accused that his claim against the United States was false and fraudulent. Thereupon defense counsel, who was certified under Article 27 of the Uni-

form Code of Military Justice, 10 USC § 827, and the only qualified lawyer participating in the trial proceeding, made the following request:

"DC: I request additional instructions, and I take them from the Case United States vs. Edwin C. Burlarley (268–780) SN, U. S. Coast Guard, CGCM 9790, Court-Martial Reports, Volume 10, page 582. Request that the words 'knowing' and 'false' be defined and also request instructions as to the credibility of witnesses.

"TC: No objections. At this time, the Defense Counsel handed the President of the Court a document which set forth in detail the additional instructions requested by the Defense Counsel. After examination of the document, the President of the Court read the additional instructions to the Court as requested by the Defense Counsel."

Consequently, the president instructed:

" 'Knowing'—definition of 'the having a certain and clear perception of the falsity of the claim made.'

**705**

" 'False'—definition of (1) 'intentionally or knowingly or negligently untrue' (2) 'Untrue by mistake, accident, or honestly after the exercise of reasonable care.' "

The above definition of "false" is in part erroneous as a representation based upon an honest mistake is a valid defense to the crime charged. United States v Ariola, 2 USCMA 637, 10 CMR 135. But, even though an inappropriate definition was given, we feel that any error in that regard was affirmatively induced, as not only did defense counsel request the incorrect instructions, but he went so far as to prepare them. This brings this case within the ruling of United States v Jones, 7 USCMA 623, 23 CMR 87, wherein it was stated:

". . . While it is true that as of the time of trial, the Dykes instruction . . . appeared to be the law of the court, there was no necessity for the defense to specifically request the instruction if he thought it harmful to his cause. The defense counsel may not at the trial request an instruction and thereafter claim on appeal that he was prejudiced by the law officer's acquiescence in that same request. See United States v Smith, 2 USCMA 440, 9 CMR 70; United States v Beer, 6 USCMA 180, 19 CMR 306. While we assert that the correct instruction on voluntariness is as we have stated in this opinion, in view of all the circumstances, including defense counsel's specific request for the instruction as given, we cannot conclude that the rights of the accused were prejudiced in this case."

Appellate defense counsel suggest that the above-quoted rule applies in general courts-martial but that it should not be applied to a special court-martial and cite to support this statement United States v Hatter, 8 USCMA 186, 23 CMR 410. That case is clearly distinguishable. There defense counsel failed to object to a misstatement of the law enunciated by trial counsel during his final argument but, because of the peculiar facts of that case, we did not

706

find waiver. The following quotation shows the reasons for our holding:

"As previously noted, defense counsel did not object to the presiding officer's instructions to the court, although he argued that counsel's statement of law was inapplicable to the facts of the case. The Government points to the fact that he was a lawyer certified by The Judge Advocate General of the Air Force and thus should be held to have waived the error now asserted on appeal. We have not been disposed to enforce the doctrine of waiver in special court-martial trials, and the facts of this case convince us to stay within that doctrine. True it is that lawyers tried the case, but the presiding officer was not trained in the law, and undoubtedly trial counsel was the oracle through which the court received its instruction on the law. When consideration is given to that fact and the further circumstance that he reinforced his views by reading from the Manual, it is not unreasonable to assume that his pronouncements would be accepted by the court as the law, regardless of any objection by defense counsel. At least the latter did argue the irrelevancy of the provision and in that way sought to call attention to the error, but trial counsel did not recede from his position. We incline to the view that, in special court-martial cases, trial counsel occupies a position which casts on him a duty not to misapply the law in his arguments and when he is a lawyer and adviser to the court-martial and he misinformed it in a critical area, waiver of the error by equally qualified defense counsel will not be enforced."

In the instant case, although the only attorney at the trial was defense counsel, we do not say that had he merely failed to object to improper instructions given by the president, waiver would follow as a matter of course. What we do hold is that when a defense counsel is trained in the law, he cannot be allowed to present erroneous instructions to a court-martial which has no formal knowledge in that field and, when they are given at his request, have appellate

defense counsel obtain a reversal because the instructions were incorrect. As the quotation from *Hatter* indicates, the rule in that case was established to protect defense counsel from the overwhelming influence which the Manual and the position of trial counsel might have upon the members of a special court-martial. However, we will not extend the rule to permit defense counsel as the moving party to induce the president of a special court-martial to err and then base a reversal on the error. That would reduce a trial to a mockery. Therefore, the first issue is resolved against the accused.

## II

The next question confronting us concerns the sentence given by the court-martial. The jurisdiction and punishment by a special court-martial is controlled by Article 19, Uniform Code of Military Justice, 10 USC § 819, which we quote for convenience:

"Subject to section 817 of this title (article 17), special courts-martial have jurisdiction to try persons subject to this chapter for any noncapital offense made punishable by this chapter and, under such regulations as the President may prescribe, for capital offenses. Special courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter except death, dishonorable discharge, dismissal, confinement for more than six months, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than six months. A bad-conduct discharge may not be adjudged unless a complete record of the proceedings and testimony before the court has been made."

It is obvious that the court-martial exceeded its statutory authority by imposing forfeiture and confinement for a period of nine months. The Government does not dispute this but contends that the convening authority approved only that part of the sentence which the court could legally give and, therefore, there remains no prejudice to the accused.

In attempting to overcome the Government's argument, the accused takes the extreme position that the entire sentence is void and "was a nullity the moment it was rendered." To so argue merely confuses the limitations on punishment with jurisdiction over the person and the offense. The authorities which the accused cites deal with the latter question. E.g., Runkle v United States, 122 US 543, 555, 30 L ed 1167, 7 S Ct 1141 (1887).

The distinction between these two concepts is properly drawn in United States v Pridgeon, 153 US 48, 14 S Ct 746, 38 L ed 631 (1894):

"Without undertaking to review the authorities in this and other courts, we think the principle is established that where a court has jurisdiction of the person and of the offense, the imposition of a sentence in excess of what the law permits does not render the legal or authorized portion of the sentence void, but only leaves such portion of the sentence as may be in excess open to question and attack. In other words, the sound rule is that a sentence is legal so far as it is within the provisions of law and the jurisdiction of the court over the person and offense, and only void as to the excess when such excess is separable, and may be dealt with without disturbing the valid portion of the sentence."

Traditionally the military has applied this rule even before the Pridgeon case. So Winthrop has commented:

"Up to a recent period it had uniformly been held that an exceeding by an inferior court of the scope of the power of punishment to which it was limited by the statute could not be made good by any action of a reviewing commander. But, in Circular No. 12 of October 6, 1892, it is announced as a decision of the Acting Secretary of War, as follows —'When a sentence of confinement or forfeiture is in excess of the legal limit, that part of it which is within the limit is legal, and may be ap-

proved and carried into execution.' The practice has been modified accordingly." [Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 487.]

Although this precise problem has never been made the subject of a previous decision, our action in upholding the sentence as approved by the convening authority can be substantiated by previous actions of this Court, as well as from the authority cited above.

In United States v Wappler, 2 USCMA 393, 9 CMR 23, a special court-martial imposed punishment which consisted of confinement for sixty days, confinement on bread and water for thirty days, $50 forfeiture for three months, and a bad-conduct discharge. The convening authority approved the sentence but suspended the punitive discharge for the period of confinement and for six months thereafter—at which time it was to be remitted. The board of review held that a bad-conduct discharge and confinement on bread and water could not be lawfully imposed in a single punishment. Accordingly, the board approved the entire sentence except the bad-conduct discharge. After considering the questions presented, this Court concluded:

". . . the only possible construction is the obvious and literal one: that where, a punitive discharge is imposed, the court may not additionally sentence the accused to confinement on bread and water—even though the latter course may otherwise be open to it under the view we have taken earlier in this opinion.
". . . Because the accused in this case was not 'attached to or embarked in a vessel,' the sentence adjudged by the court-martial, in so far as it imposed confinement on bread and water, was illegal and void. This being so, the imposition of a bad-conduct discharge did not contravene the proscription of paragraph 127c of the Manual, relating to equivalent punishments, and was not illegal. Therefore, the punitive discharge may be restored by the board of review, for it erred in setting it aside for the reason assigned."

Defense counsel's attempt to bring this case under the rule announced in United States v Bancroft, 3 USCMA 3, 11 CMR 3, is abortive. There the entire proceedings of the special court-martial were void as the offense alleged was a capital offense and by law that type of court was denied the power to try an offense carrying a death penalty. When that situation exists, the court-martial has no jurisdiction to proceed.

From the foregoing, it is apparent that we are not dealing with jurisdiction but only with an excessive sentence. As we have previously held that boards of review have the inherent power to reduce an illegal sentence to a legal one, United States v Goodwin, 5 USCMA 647, 18 CMR 271; United States v Bigger, 2 USCMA 297, 8 CMR 97, we conclude that that same power vests in the convening authority who has been given a much broader prerogative in the area of sentence than a board of review. See Article 64, Uniform Code of Military Justice, 10 USC § 864; Manual for Courts-Martial, United States, 1951, paragraph 88.

III

The final issue assigned for argument in this case is whether the advice of the staff judge advocate to the supervisory authority regarding the legality of the sentence was prejudicial. While at first blush, there may be some question of inaccuracy, when read in its entirety there is no doubt in our mind that the supervisory authority was not misled. In this connection, it must be remembered that this advice was composed after the convening authority had reduced the sentence to its legal limits. The staff judge advocate states in part:

"The sentence *imposed* was within the power of the court to *adjudge* and was within the prescribed limitations on punishment. The total maximum punishment authorized for the offenses of which the accused stands convicted is dishonorable discharge, total forfeitures and confinement at hard labor not to exceed 14 years, 6 months. Therefore, *the sentence as approved by the convening*

*authority* cannot be considered excessive or severe." [Emphasis supplied).

This statement was made under the subdivision designated "Clemency Considerations" and after a very thorough, exhaustive, and painstaking review of the evidence, the irregularities involved, and the factors touching on the possibility of rehabilitation. Although consideration is given to the fact that the maximum punishment is only applicable to a general court-martial, the quoted statement is accurate in all respects except that the sentence imposed was within the power of the court to adjudge. That inaccuracy must be considered in the light of the entire record and, when that is done, it becomes clear that the reviewer was considering the imposed and adjudged sentence as it reached his desk. At that time, the convening authority had reduced the sentence to legal limits, hence, when it was considered by the officer exercising general court-martial jurisdiction, it was within limits which the court-martial could adjudge. That no one could be misled by this one isolated inaccuracy is beyond cavil for on the first page of the review is this illuminating chart:

"Sentence adjudged: BCD, F $50.00 per mo for 9 mos, CHL for 9 mos

Sentence Approved by Convening authority: BCD, F $50.00 per mo for 6 mos, CHL for 6 mos

*Maximum Punishment: BCD, F $71.06 per mo for 6 mos, CHL for 6 mos*

Sentence Recommended: BCD, F $50.00 per mo for 6 mos, CHL for 6 mos."

[Emphasis supplied.]

We fail to see how the information could be presented in a clearer fashion than was done above, and we are convinced that the entire review is so comprehensive and complete on all aspects of the sentence that no possible harm resulted to the accused. Accordingly, we find no prejudice.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.