UNITED STATES

v.

Captain John D. WARD, 244–38–2094 FV United States Air Force.

ACM 23287.

U. S. Air Force Court of Military Review.

Sentence Adjudged 28 May 1981.

Decided 23 April 1982.

Appellate Counsel for the Accused: Mr. Arthur P. Swerdlove, Wichita Falls, Texas, Colonel George R. Stevens and Captain Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

A general court-martial, consisting of members, convicted the accused of multiple claim offenses, larceny, and obtaining government services by fraud, violations of Articles 132, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 932, 921, 934.[1]

---

1. He was acquitted of additional allegations of larceny, selling tax-exempt property, and engaging in a business activity without permission.

He was sentenced to twenty-four months' confinement at hard labor, forfeiture of $800.00 per month for twenty-four months, and a reprimand. We affirm.

I

Evidence at trial developed the following facts: The accused, a chaplain was assigned to Clark Air Base, Republic of the Philippines, in October 1978. His church, through a Filipino affiliate church, supported The Way Inn Christian Center as a ministry to service personnel. The Way Inn was located off base and was maintained as a hostel. For some years the results of the ministry had been disappointing, and the building itself had begun to deteriorate. When the accused was transferred to Clark Air Base, his wife was appointed as Director of the Center. While his wife was the nominal director, the accused supervised the day-to-day running of the Center, and was in charge of its operation. He and his wife moved into The Way Inn and lived there during his overseas tour. Servicemembers arriving or leaving Clark Air Base could obtain rooms at The Way Inn, and were expected to donate a sum equal to their Temporary Lodging Allowance (TLA).[2]

Major Eugenie Blakovitz and Senior Master Sergeant Henry E. Williams and their families stayed at The Way Inn upon their arrival at Clark Air Base. The accused gave them receipts when no money had been paid, and certified that meals had been provided when they had not. The accused and Williams "split" the money Williams got for TLA.

In July 1980, Thomas Cardona came to the Philippines as a missionary and assumed the directorship of the The Way Inn Christian Center since the accused and his family were to return to the United States that Fall. On approximately 18 August 1980, Mr. Cardona signed a receipt as: "Director, The Way Inn," showing that the accused had paid $530 to The Way Inn for lodging, meals and laundry for himself, his wife, and their two children. Mr. Cardona was reluctant to sign the receipt as no money had changed hands, but the accused convinced him it was proper. On 19 August 1980, the accused received $430.00 from the Accounting and Finance Office as TLA from 12–21 August 1980. During this period the accused was staying in the Director's quarters at The Way Inn where he and his family had lived for the past twenty-two months.

Troubled by his conversation with the accused, Mr. Cardona reported the receipt incident to the Office of Special Investigations (OSI), and later released The Way Inn financial records to that organization.

In August 1980, Sergeant Ila K. Carter, a chaplain's assistant, and the accused entered into a sham sale of the accused's 1975 Chevrolet pick-up truck so that it could be shipped to the United States on Carter's orders.[3] Since she did not own a car, and the accused assured her she "would not get into trouble," she agreed to help him. She paid him no money, and returned all the paperwork to the accused after the truck was shipped.

In August, the accused also asked Paul J. Bandshuh, who was then on active duty and owned no car, to ship a 1977 Chevrolet Caprice Stationwagon on the latter's orders to the United States. Bandshuh hesitated, but agreed after the accused indicated he had just shipped a pickup truck like this, and nothing had gone wrong. Bandshuh never intended to buy the car and paid no money to the accused. It cost the Air Force approximately $3236.00 to ship the two vehicles to the United States.

The accused, testifying only as to the larceny and false claim allegations of 19 August 1980, denied any intent to defraud

---

**2.** Temporary lodging allowances (TLA) partially reimburse a member for the more than normal expenses incurred during occupancy of temporary lodging and expenses for meals where there are no facilities for preparing them. Joint Travel Regulations, Vol. 1, Part G, para M4303, 4 Jan 1982.

**3.** Military personnel can ship one privately owned vehicle to the CONUS at government expense. Joint Travel Regulations Chapter 11, para M1102, 1 Jan 1982.

the Air Force and maintained he had paid the $530.00 to The Way Inn. Additionally, he offered extensive evidence as to his reputation for honesty and truthfulness. He also presented evidence that Mr. Cardona had a reputation for untruthfulness and was antagonistic toward him.

## II

Appellate defense counsel contend the military judge abused his discretion by denying the accused's request for a bench trial. In refusing the request the military judge stated:

> This is the first time I have done this in my six years as a judge, but I am going to disapprove the request. He is a member of the cloth, he is a chaplain, I think this is a case that should be decided by the U.S. Air Force community here, those people who are as unbiased at the beginning of the trial as humanly possible to find. For that reason, in my opinion, this is the type of case that should be decided by members and I'm going to disapprove [the request].

■ An accused has no right to trial by judge alone. *United States v. Ward*, 3 M.J. 365 (C.M.A.1977) and cases cited therein. The analogous constitutional guarantee is the *right* to trial by jury, i.e., with members, and there is no correlative right to trial without a jury. As we held in *United States v. Dupree*, 45 C.M.R. 456 (A.F.C.M.R. 1972), *pet. denied*, 21 U.S.C.M.A. 640, 45 C.M.R. 928 (1972):

> Compelling an accused to undergo a trial with members against his will, is not contrary to an accused's right to a fair trial or due process.

Further, we find nothing unfair in assuring that the verdict and punishment will reflect the thinking of the community as represented by the court members. *State v. Thompson*, 88 Wash.2d 13, 558 P.2d 202 (Wash.1977). We find no error in the denial of the request for trial by military judge alone. *See Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

## III

In December 1980, a pretrial investigation began with the accused being represented by counsel. At the outset he was advised of his Article 31, 10 U.S.C. § 831, rights and his right to remain silent. Upon reconvening a month later the accused was again represented by the same counsel. The second session was to afford accused and counsel the opportunity to examine documents which the investigating officer intended to include in his report.

These documents were given to counsel who passed them to the accused who proceeded to voluntarily explain the rationale for his actions. His explanations led to additional false claim allegations.

Notwithstanding that the accused's attorney was present at both hearings, appellate defense counsel urged that the investigating officer erred in not readvising the accused of his right to remain silent at the beginning of the second session. In their view, this made the evidence relating to the additional false claim allegations inadmissible (Specifications of Additional Charge II).

■ We disagree. The Article 31 warnings given the accused at the outset of the pretrial investigation, coupled with the fact that his attorney was present at all times, negate the premise that the accused was unaware of his right to remain silent. The warning of rights at the initial session was sufficient to cover a subsequent session thirty days later. *United States v. Paul*, 24 C.M.R. 729 (A.F.B.R.1957); *but see United States v. Weston*, 1 M.J. 789 (A.F.C.M.R. 1976). Finally, the accused volunteered a statement which was not in response to any questioning designed to elicit an incriminatory answer. *See generally, United States v. Mraz*, 2 M.J. 266 (A.F.C.M.R.1976).

## IV

■ The defense argues there is a failure of proof as to the fraudulent shipment of two private vehicles to the United States. They contend there is no evidence the accused made a misrepresentation to the Transportation Management Office concerning the sale of his motor vehicles.

Within the Air Force, the Traffic Management Office (TMO)[4] is the agency responsible for obligating the government for the procurement of shipping services. Before a private vehicle is accepted for shipment, the service member must present all pertinent documents that establish his eligibility. Air Force Regulation 75–24(C2), Movement and Storage of Personal Property, 9 Jul 76, paras 10–2 and 11–1f; *see generally*, Department of Defense Regulation 4500. 34R, Personal Property Traffic Management, May 1971, paras 1001, 2001(ac), and 4016.

The record is clear that the accused gave Carter and Bandshuh false bills of sale through which he was able to obtain free transportation for two additional automobiles. Both Carter and Bandshuh used the putative documents to support the claim that the automobiles were theirs. The TMO shipped the vehicles relying upon the misrepresentation that they belonged to Carter and Bandshuh not the accused. We are convinced beyond a reasonable doubt the representations were false, and the United States relied upon them. There is ample evidence to support the finding of guilty of obtaining government services by fraud.

### V

■ At trial, Mr. Bandshuh testified that after he returned to the United States, Mrs. Ward contacted him and stated her husband was going to be in trouble if he kept the car. She then gave the car to Bandshuh. Appellate defense counsel contend this was inadmissible hearsay to which they properly objected. Government counsel counter that the testimony was admissible pursuant to Mil.R.Evid. 804(b)(3) as a statement against penal or pecuniary interest.

We reject the government's position as there is no showing that Mrs. Ward was unavailable as a witness as required by the Rule. There is no indication she would have invoked her spousal privilege under Mil.R.Evid. 504(a) and refuse to testify. To the contrary she testified at length during the defense presentation.

■ We do find, however, the statements of the accused's wife were admissible against the accused under the provision of Mil.R.Evid. 801(d)(2)(E). *United States v. Dillon*, 12 M.J. 640 (A.F.C.M.R.1981). It is apparent that she was attempting to conceal her husband's scheme of obtaining shipment of additional automobiles to the United States at government expense. Her phone call to Bandshuh was to forestall detection and to hide what had transpired up to that point. The admissibility of such evidence requires only a showing of the likelihood of an illicit association between the declarant and the accused. *United States v. Zamarripa*, 544 F.2d 978 (8th Cir. 1976).

### VI

During his closing argument on findings, individual defense counsel, a civilian practitioner and a former Air Force judge advocate, repeatedly maintained that the accused ought to be acquitted of the larceny and false claim allegations because he had made an *honest and reasonable mistake* as to his entitlement to the money.[5]

During his instructions the military judge informed the members the accused should be acquitted of these offenses if they found he had made an "honest and reasonable mistake" regarding his right to the money involved.

The military judge then stopped and asked individual defense counsel if the crux of his argument was that the accused had made an honest and reasonable mistake. Counsel agreed this was his position and nothing further was said. Later, he was

---

4. We are convinced that the "Transportation Management Office" and the "Traffic Management Office" are the same entity of the U.S. Government. This minor variation in designation did not mislead the accused or misinform the court members.

5. Mistake of fact as a possible defense was not raised during the out-of-court session held to discuss instructions.

allowed an opportunity to object to the instructions as given and to request additional instructions; he did neither.

Now on appeal, the same individual defense counsel asserts contrariwise that the instruction was wrong in that only an honest mistake on the part of the accused is the standard to be used.

■ He is correct in this assertion since both the larceny and false claim offenses require either specific intent or knowledge. Where a specific intent or knowledge is an element of an offense charged, an honest mistake essential to the required state of mind will constitute a defense. *United States v. Parker*, 28 C.M.R. 785 (A.F.B.R. 1959) and cases cited therein. The military judge erred in instructing the court that the mistake must be both honest and reasonable.

The issue now is this: May a self-induced error be grounds for reversal on appeal? In *United States v. Jones*, 7 U.S.C.M.A. 623, 23 C.M.R. 87 (1957), Senior Judge Ferguson said:

The defense counsel may not at the trial request an instruction and thereafter claim on appeal that he was prejudiced by the [military judge's] acquiescence in that same request [citations omitted].

The same principle was reiterated in *United States v. Parker*, 6 U.S.C.M.A. 704, 25 C.M.R. 208 (1958). This generally appears to be the rule in both the federal and state court systems. *See*, Am.Jur.2d, *Appeal and Error*, § 719; *Petschl v. United States*, 369 F.2d 769 (8th Cir. 1966); *State v. Taylor*, 109 Ariz. 481, 512 P.2d 590 (1973); *State v. Allen*, 56 Ill.2d 536, 309 N.E.2d 544 (1974); *State v. Upton*, 167 N.W.2d 625 (Iowa 1969).

We are cognizant of the Court of Military Appeals mandate in *United States v. Thomas*, 11 M.J. 315 (C.M.A.1981) wherein the Court held that a military judge has a *sua sponte* duty to instruct the court members correctly and fully on all issues raised by the evidence. This decision followed their holding in *United States v. Graves*, 1 M.J. 50 (C.M.A.1975), stating the desires of counsel are not controlling and the military judge bears the primary responsibility for assuring the members are properly instructed on potential defenses.

■ However, we do not interpret *Thomas*, and *Graves*, both *supra*, to mean that a defense counsel can: repeatedly argue to the jury an incorrect principle of law; when asked by the trial judge, aver this is the theory of the case on which he is defending; affirmatively accept an instruction based on this theory of defense; request no additional instructions; and then, on appeal, claim the wrong instruction was given. Under these circumstances we hold that, the defense will not be heard to complain of instructional error on appeal. *Jones, supra; Parker, supra.*

VII

■ In an exhaustive assignment of error military appellate defense counsel maintain that the court-martial lacked *in personam* jurisdiction over the accused as the establishment of a military chaplaincy department within the Air Force violates the constitutional guarantee of separation of Church and State.

Initially, we note that the accused is a commissioned officer on active duty stationed in a foreign country. In *Dynes v. Hoover*, 20 Howard 65, 15 L.Ed. 838 (1858), the United States Supreme Court made it clear that Congress had and has the constitutional power to render persons actually in the military service liable to trial by court-martial for crimes they commit. This authority was exercised by Congress with the enactment of Article 2(1) of the Uniform Code of Military Justice. The accused's status makes him subject to the Code. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). *United States v. Burney*, 6 U.S.C.M.A. 776, 21 C.M.R. 98 (C.M.A.1956); *United States v. Copeland*, 21 C.M.R. 838 (A.F.B.R.1956); *pet. denied* 31 C.M.R. 314; *United States v. Quinones*, 33 C.M.R. 910 (A.F.B.R.1963).

We also note that historically chaplains have been subject to trial by courts-martial. *United States v. Scarborough*, 4 BR (ETO)

27 (20 Jan 1944); *United States v. McCurdy*, 7 BR (ETO) 347 (21 Jul 1944). Accordingly, we hold the court-martial had *in personam* jurisdiction over the accused.

### VIII

Finally, the accused urges that the general court-martial convening authority abused his discretion in denying the request for deferment of confinement pending appellate review. On 18 February 1982, the accused moved to accelerate consideration of this assignment of error. By Order, this Court, on 12 March 1982, granted the accused's MOTION TO AMEND AND ACCELERATE CONSIDERATION OF AND DECISION OF ERROR XX OF APPELLANT'S ASSIGNMENT OF ERROR. We resolved that issue by concluding that the convening authority did not abuse his discretion in denying the requested deferment.

We have considered the remaining assignments of error and resolve them adversely to the accused. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

POWELL, Senior Judge, and MILLER, Judge concur.